174 F.3d 394
 Mohammad H. CHAUDHRY; Diana M. Chaudhry, Plaintiffs-Appellants,
v.
Michael G. GALLERIZZO; Gebhardt & Smith, Defendants-Appellees.
James E. Kiley, Jr., Appellant,
Mohammad H. Chaudhry; Diana M. Chaudhry, Plaintiffs-Appellants,
v.
Michael G. Gallerizzo; Gebhardt & Smith, Defendants-Appellees.
 Nos. 98-1024, 98-1595.
 United States Court of Appeals,
Fourth Circuit.
 Argued Dec. 1, 1998.
Decided April 5, 1999.
 
 ARGUED: James Edward Kiley, Jr., Law Offices of James E. Kiley, Jr., P.C., Rockville, Maryland, for Appellants. Louis Jay Ebert, Gebhardt & Smith, L.L.P., Baltimore, Maryland, for Appellees. ON BRIEF: Mark M. Dumler, George R. Calhoun, Gebhardt & Smith, L.L.P., Baltimore, Maryland, for Appellees.
 Before MURNAGHAN, LUTTIG, and KING, Circuit Judges.
 Affirmed by published opinion. Judge MURNAGHAN wrote the opinion, in which Judge LUTTIG and Judge KING joined.
 OPINION
 MURNAGHAN, Circuit Judge:
 
 
 1
 Plaintiffs, Mohammad and Diana Chaudhry, filed the present action against Defendants Michael Gallerizzo and his law firm, Gebhardt & Smith, in the United States District Court for the District of Maryland, alleging various violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C.A. § 1692a, et seq. (West 1998). The district court granted a motion for judgment as a matter of law in favor of Defendants on all counts. In addition, the district court levied sanctions against Plaintiffs and their attorney for filing frivolous claims. We affirm.
 
 I.
 
 2
 NationsBank, N.A. is a national banking association which maintains an office in Bethesda, Maryland. NationsBanc Mortgage Corporation ("NMC") is a national mortgage provider and is an affiliate of NationsBank, N.A. NMC's principal office is located in Dallas, Texas. NationsBank, N.A. and NMC are collectively referred to as "NationsBank."
 
 
 3
 In 1994, the Chaudhrys decided to move from their home on Barnwood Lane ("Barnwood Home") to a home they planned to build on Inglewood Drive in Potomac, Maryland (the "Inglewood Home"). After discussions with Richard Garrard, a NationsBank loan officer, the Chaudhrys took out a home equity line on their Barnwood Home to assist in the purchase of the lot for the Inglewood Home and obtained a construction loan from NMC for the actual construction of the Inglewood Home (the "Construction Loan").[1]
 
 
 4
 When the Chaudhrys defaulted on the Construction Loan by, among other things, failing to pay the required monthly payments of interest, NationsBank transferred all of the Chaudhrys' personal and business loans to Special Assets, a division of NationsBank, N.A. that deals with problem loans. Special Assets retained Gallerizzo and Gebhardt & Smith to represent the interests of NationsBank in connection with the Chaudhrys' loan.
 
 
 5
 After Special Assets assumed responsibility, the Chaudhrys' attorney, James Kiley, scheduled a meeting for December 21, 1995. The Chaudhrys, Kiley, Michael Fodel, a supervisor in Special Assets, and Gallerizzo met at the Virginia offices of NationsBank, N.A. Unknown to Gallerizzo or Fodel, Kiley taperecorded the meeting. Throughout the course of the meeting, Gallerizzo emphasized that no oral agreements could be made at the meeting and that NationsBank would not agree to anything unless the parties signed a written agreement containing a release of any claims the Chaudhrys believed they had against the bank. The Chaudhrys refused to agree to such a release. Gallerizzo also indicated that NationsBank might require the Chaudhrys to pay the full balance of the Construction Loan if no agreement were reached.[2]
 
 
 6
 After the December 21st meeting, Fodel instructed Gallerizzo to demand payment from the Chaudhrys. On December 22, 1995, Gallerizzo drafted a demand letter requiring the Chaudhrys to pay the amounts owed under the Construction Loan Documents within thirty days (the "Demand Letter"). The letter set forth the amount owed by the Chaudhrys for principal, interest and inspection fees. In addition, Gallerizzo advised the Chaudhrys that they were also obligated to reimburse the bank for all costs, expenses and attorneys fees which the bank incurred in connection with the matter. Gallerizzo did not demand payment of the attorneys fees or set forth a particular amount of attorneys fees.
 
 
 7
 On January 4, 1996, Kiley wrote to Gallerizzo, disputing the amounts that NationsBank claimed were due. Pursuant to the FDCPA, he requested that Gallerizzo verify the amounts claimed in the Demand Letter. After receiving Kiley's January 4th letter, Gallerizzo telephoned Jeffrey Richman, another bank representative in Special Assets, and requested that he confirm the sums that were owed for principal, interest and inspection fees. By letter dated January 18, 1996, Gallerizzo sent Kiley a verification of the indebtedness and assured Kiley that the Chaudhrys did, in fact, owe the verified sums. The next day, Gallerizzo again wrote to Kiley and set forth the amounts necessary to pay off the Construction Loan. Subsequently, in a telephone conversation, Gallerizzo asked Kiley whether he had the information he requested. Kiley responded that he had received everything he needed except for verification of the attorneys' fees. Gallerizzo discussed with Richman the amount that NMC would accept from the Chaudhrys in payment of NMC's attorneys' fees. On or about January 19, 1996, Richman instructed Gallerizzo to accept from the Chaudhrys $8,600, an amount less than the actual attorneys' fees incurred by NMC through that date.
 
 
 8
 In the course of investigating allegations set forth in Kiley's January 4th letter, Gallerizzo identified an issue which he believed could potentially result in liability for NMC. Because NationsBank, N.A. was acting as the servicing agent for NMC and because the Chaudhrys had threatened to sue NMC as the agent of NationsBank, N.A., Gallerizzo believed that any potential claim against NationsBank, N.A. could result in a claim against NMC. In order to advise NMC, Gallerizzo instructed an associate of Gebhardt & Smith to research the issue and prepare a research memorandum regarding his findings (the "Research Memorandum"). A redacted portion of the Research Memorandum was admitted into evidence. Gallerizzo billed NMC for the fees incurred in researching the Chaudhrys' potential defense, and sent the bills to Richman at the offices of NationsBank, N.A.
 
 
 9
 On January 22, 1996, Kiley wrote to Gallerizzo and indicated that he still needed verification of the attorneys' fees. Relying on this letter and his earlier telephone conversation with Kiley, Gallerizzo forwarded copies of the legal bills of Gebhardt & Smith but did not forward any additional information regarding the inspection fees. Believing the legal bills contained privileged information, Gallerizzo used a black marker to redact portions of several time entries on the bills.
 
 
 10
 Also on January 22, 1996, the Chaudhrys' settlement attorney, Diane Fox, forwarded a request to NationsBank for a payoff figure on the Construction Loan, claiming that a meeting to refinance the loan was scheduled on January 25, 1996. At the request of NationsBank, Gallerizzo forwarded to Fox a payoff letter dated January 24, 1996.
 
 
 11
 The Chaudhrys filed the present action on April 8, 1996, alleging violations of the FDCPA and common law fraud claims.[3] At the initial pre-trial proceedings, the Chaudhrys demanded unredacted versions of Gebhardt & Smith's legal bills. The Chaudhrys also demanded the release of the Research Memorandum prepared by Gebhardt & Smith that discussed possible violations of federal statutes. When Gallerizzo objected to the disclosure of the information, the Chaudhrys filed motions to compel production.
 
 
 12
 District Judge Marvin J. Garbis reviewed in camera the unredacted legal bills and the Research Memorandum.[4] With respect to the legal bills, Judge Garbis confirmed that the items redacted revealed the federal statutes researched by Gebhardt & Smith. The first statute researched was the FDCPA. Consequently, Judge Garbis upheld the claim of privilege but determined that, because the Chaudhrys had filed suit, there was no harm in disclosing the fact that Gallerizzo had researched the Act. However, Judge Garbis ruled that the other federal statute, which was the subject of the Research Memorandum, was privileged and refused to disclose the research. Judge Garbis produced a redacted version of the first page of the Research Memorandum which did not reveal the research conducted.
 
 
 13
 A split bench and jury trial commenced on October 27, 1997. At trial, the Chaudhrys, in part, argued that Gallerizzo had misled them at the December 21st meeting by indicating that he would provide them with the amount of interest due which, if paid, would cure the loan default. They also maintained that some of the legal fees demanded from them was for legal services unrelated to the loan default and, thus, not chargeable under the Construction Loan. With the agreement of counsel, the trial judge decided to submit to the jury limited special verdict questions on these two issues. The court first asked the jury if Plaintiffs had proven by a preponderance of the evidence that Gallerizzo had made false, deceptive, or misleading statements at the December 21st meeting. The court then asked if Plaintiffs had proven by a preponderance of the evidence that the legal fees demanded from them were in excess of the amount properly chargeable to them. The jury returned a verdict in favor of Gallerizzo on issue one, but ruled against him on issue two. With respect to issue two, the jury found that the fees were not properly chargeable to the Chaudhrys and that Gallerizzo had knowingly and intentionally attempted to collect the excessive amount. After a hearing on post-trial motions, the court denied the Chaudhrys' motion for judgment as a matter of law as to issue one, granted Gallerizzo's motion for judgment as a matter of law on issue two, and entered judgment in favor of Gallerizzo on all other counts. On motion by Gallerizzo, the trial court granted sanctions against the Chaudhrys and their attorney for filing claims in bad faith and for the purpose of harassing Defendants. The Chaudhrys now appeal the district court determination.
 
 II.
 
 14
 A. Unredacted Legal Bills and Research Memorandum
 
 
 15
 The Chaudhrys first claim that the district court erred in refusing to grant their motions to compel Defendants to produce unredacted legal bills and the entire Research Memorandum. Appellants insist that Defendants improperly prevented the discovery of certain relevant information by asserting attorney-client and work product privileges, without establishing any factual basis proving the asserted privileges. We review the district court's decision that certain documents are subject to privilege de novo, since it involves a mixed question of law and fact. See In re Grand Jury Proceedings, 33 F.3d 342,353 (4th Cir.1994).
 
 
 16
 Under the attorney-client privilege, confidential communications made between a client and an attorney in an effort to obtain legal services are protected from disclosure. Typically, the attorney-client privilege does not extend to billing records and expense reports. See id. at 353-54. In Clarke v. American Commerce National Bank, 974 F.2d 127 (9th Cir.1992), however, the Ninth Circuit distinguished between privileged and discoverable information contained in an attorney's billing records:
 
 
 17
 [T]he identity of the client, the amount of the fee, the identification of payment by case file name, and the general purpose of the work performed are usually not protected from disclosure by the attorney-client privilege. However, correspondence, bills, ledgers, statements, and time records which also reveal the motive of the client in seeking representation, litigation strategy, or the specific nature of the services provided, such as researching particular areas of law, fall within the privilege. Id. at 129 (citations omitted).
 
 
 18
 In Clarke, the court concluded that the billing records were discoverable because of the general nature of the information provided therein, e.g., information on the identity of the client, the case name for which payment was made, and the amount of the fee. Id. at 130. The attorney's bills in Clarke, unlike Gallerizzo's bills, contained "nothing [that] ... reveal[ed] specific research or litigation strategy which would be entitled to protection from disclosure." Id. at 130; see also In re Grand Jury Proceedings, 33 F.3d at 354 (intimating that the determination as to whether attorney billing statements are privileged hinges on whether the statements reveal something about the advice sought or given). In the instant case, the legal bills revealed the identity of the federal statutes researched. Since the records would divulge confidential information regarding legal advice, they constitute privileged communications and, as such, should not be disclosed.
 
 
 19
 Furthermore, the work product doctrine prohibits the disclosure of the Research Memorandum. Under the work product rule, codified in Fed. R. Civ. P. 26(b)(3), "an attorney is not required to divulge, by discovery or otherwise, facts developed by his efforts in preparation of the case or opinions he has formed about any phase of the litigation." In re Doe, 662 F.2d 1073, 1077 (4th Cir.1981), cert. denied, 455 U.S. 1000, 102 S.Ct. 1632, 71 L.Ed.2d 867 (1982). Fact work product is discoverable only "upon a showing of both a substantial need and an inability to secure the substantial equivalent of the materials by alternate means without undue hardship." In re Grand Jury Proceedings, 33 F.3d at 348. Opinion work product is even more carefully protected, since it represents the thoughts and impressions of the attorney. See id. at 348. As we explained in In re Doe, " '[a]n attorney's thoughts are inviolate, ... and courts should proceed cautiously when requested to adopt a rule that would have an inhibitive effect on an attorney's freedom to express and record his mental impressions and opinions without fear of having these impressions and opinions used against the client.' " 662 F.2d at 1080. As a result, "opinion work product enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances." In re Grand Jury Proceedings, 33 F.3d at 348; see also In re Doe, 662 F.2d at 1079, 1080.
 
 
 20
 The materials sought by Appellants relate to legal research conducted in connection with collection of the Construction Loan and detail the mental impressions, conclusions, and legal theories of NMC's attorneys. As opinion work product, the materials are entitled to substantially greater protection than fact work product. Yet, Appellants fail to establish even the minimal required showing of a substantial need for the materials and undue hardship in obtaining their equivalent. Indeed, they advance no compelling arguments toward that end. Under the circumstances, we cannot conclude that the facts of the instant case constitute the "very rare and extraordinary" situation justifying disclosure of opinion work product. The materials, therefore, are not subject to discovery.
 
 
 21
 Appellants maintain that, even if the attorney-client privilege and work product doctrine apply, the exception for crimes, frauds, and torts also applies here. The exception provides that a confidential communication between attorney and client "will not be privileged if made for the purpose of committing or furthering a crime or fraud." In re Grand Jury Proceedings, 33 F.3d at 348; see also In re Doe, 662 F.2d at 1079. Appellants allege that the redacted legal bills indicate that Defendants were attempting to collect amounts billed to NationsBank for the other disputes the Chaudhrys have with the bank, which are not collectible under the Construction Loan. Appellants maintain that they are entitled to copies of the unredacted legal bills and the Research Memorandum for use at trial because they evidence wrongdoing under the FDCPA.
 
 
 22
 Appellants, as the party asserting the crime/fraud exception, must make a prima facie showing that the privileged communications fall within the exception. Appellants must prove that "(1) the client was engaged in or planning a criminal or fraudulent scheme when he sought the advice of counsel to further the scheme and (2) the documents containing [the privileged materials] ... bear a close relationship to the client's existing or future scheme to commit a crime or fraud." In re Murphy, 560 F.2d 326, 338 (8th Cir.1977); see also In re Grand Jury Proceedings, 33 F.3d at 349 n. 13 (quoting In re Murphy favorably). Appellants produced no evidence addressing either element of the required showing, so their claim must fail.
 
 
 23
 Under the circumstances, the district court did not abuse its discretion by denying Appellants' motion to compel production of the unredacted legal bills and the Research Memorandum. See In re Grand Jury Proceedings, 33 F.3d at 348 (noting that "[a] district court's determination of whether the government satisfied [the] standard [for the crime-fraud exception] will not be reversed absent a clear showing of abuse of discretion").
 
 B. Amended Complaint
 
 24
 Appellants also claim that the district court erred in refusing to allow them to amend their complaint for a third time. Federal Rule of Civil Procedure 15(a) governs the circumstances under which parties who have already pleaded in a case will be permitted to amend their pleadings. Fed.R.Civ.P. 15(a). Rule 15(a) provides that "a party may amend the party's pleading once as a matter of course at anytime before a responsive pleading is served .... Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). We have determined that "a motion to amend may be denied when it has been unduly delayed and when allowing the motion would prejudice the non-movant." Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc., 43 F.3d 922, 941 (4th Cir.1995). The trial court is generally in a better position to make such a determination. See In re Jeffrey Bigelow Design Group, Inc., 956 F.2d 479, 483 (4th Cir.1992). We, therefore, review the court's decision for abuse of discretion. See Lone Star Steakhouse, 43 F.3d at 940.
 
 
 25
 Appellants argue that justice required the lower court to allow the amendments, especially where Defendants would have suffered no prejudice. As support for their contention, Appellants cite Foman v. Davis, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). In Foman, the Supreme Court observed that "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." Id. at 182, 83 S.Ct. 227. The Court also suggested, however, that leave to amend should be freely given only "[i]n the absence of any apparent or declared reason--such as undue delay, ... repeated failure to cure deficiencies by amendments previously allowed, [and] undue prejudice to the opposing party." Id.
 
 
 26
 An amendment of the pleadings only two weeks before trial would have improperly allowed Plaintiffs to alter their case to the unfair prejudice of Gallerizzo. The district court previously permitted the Chaudhrys to file a second amended complaint. At that time, Plaintiffs could have included the claims they later tried to add. Given the broad discretion afforded the district court in determining the appropriateness of allowing amendments to pleadings, the fact that Plaintiffs had been allowed to amend their complaint previously and the close proximity of the third request to the commencement of trial, we find no error in the court's decision to deny the request.
 
 C. Judgment as a Matter of Law
 
 27
 The Chaudhrys also maintain that the district court erred in denying their motion for judgment as a matter of law and in granting Defendants' motion for the same. Federal Rule of Civil Procedure 50(a) provides that, in actions tried by a jury, the district court may grant a motion for judgment as a matter of law if "a party has been fully heard ... and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party." Fed.R.Civ.P. 50(a)(1). We review the grant or denial of a Rule 50(a) motion de novo, see Malone v. Microdyne Corp., 26 F.3d 471, 475 (4th Cir.1994), viewing the evidence in the light most favorable to the non-movants. See id. at 472 n. 1. "Judgment as a matter of law is proper 'when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment.' " Price v. City of Charlotte, 93 F.3d 1241, 1249 (4th Cir.1996), cert. denied, 520 U.S. 1116, 117 S.Ct. 1246, 137 L.Ed.2d 328 (1997). With this standard in mind, we evaluate the merits of Appellants' claim.
 
 
 28
 1. Gallerizzo's Alleged Failure to Disclose Amount of Debt in Fair Debt Letter
 
 
 29
 Appellants allege that Gallerizzo failed to disclose in the December 22nd Demand Letter the precise amount owed by them for legal fees,in violation of § 1692g(a) of the FDCPA.[5] The district court entered judgment in favor of Gallerizzo, finding that "the Chaudhrys were given fair notice that there was an obligation for legal fees." The court further determined that "legal fees were not due and payable at the time the notices were sent." Appellants argue that the court's legal conclusion regarding when legal fees are "due and payable" is erroneous and its factual findings in support of its conclusions are contrary to the evidence.
 
 
 30
 Relying on Black's Law Dictionary (6th ed.1990), Appellants urge that while "[p]ayable may ... signify an obligation to pay at a future time, ... when used without qualification, [the] term means that the debt is payable at once." Appellants thus conclude that attorneys' fees become a legally enforceable debt as soon as the legal services are rendered, making the district court's legal conclusion that they "were not due and payable at the time the notices were sent" erroneous.
 
 
 31
 We believe, however, that the law of Maryland dictates otherwise. Under state law, loan documents may require that a debtor pay to a creditor the costs incurred by the creditor in collecting a debt, including reasonable attorneys' fees. See Mortgage Investors of Washington v. Citizens Bank and Trust Co. of Maryland, 29 Md.App. 591, 349 A.2d 647, 650, aff'd, 278 Md. 505, 366 A.2d 47 (1976). As Appellants suggest, attorneys' fees due under a promissory note "are payable upon performance of the services contemplated." Id. at 653. At the time the Demand Letter was sent, however, the legal services had not yet been fully rendered. The fees continued to mount. Furthermore, it was not clear that any legal fees would be owed, since NMC had discretion as to whether to impose legal fees at all and, if so, in what amount. Indeed, when contacted by Gallerizzo to obtain the amount of attorneys' fees to charge the Chaudhrys, NMC only required the Chaudhrys to pay $8,600, an amount less than the fees actually billed to NMC. Therefore, Gallerizzo, through the Demand Letter, was merely advising the Chaudhrys that they may also be liable to NMC for attorneys' fees, as was provided in the Construction Loan. Under the circumstances, we find no error in the district court's grant of judgment as a matter of law in favor of Appellees.
 
 
 32
 2. Gallerizzo's Failure to Cease Collection Efforts on Allegedly Unverified Inspection Fees and Legal Fees
 
 
 33
 Appellants allege that Defendants violated § 1692g(b)[6] by (1) failing to verify the inspection fees portion of the debt asserted in the Demand Letter (Count II); (2) failing to verify the legal fees portion of the debt (Count III); and (3) failing to cease his collection efforts with respect to the foregoing disputed portions of the debt (Count IV).
 
 
 34
 With respect to Count II, the district court determined that Appellants' counsel, in a telephone conversation with Gallerizzo where he stated that the verification that was needed related to legal fees, "waived whatever claim that the Chaudhrys might make in regard to the alleged failure to verify the inspection fees." Assuming that there had been no waiver, however, the court determined that "Gallerizzo adequately verified the amount of inspection fees" and "then sent the Chaudhrys' counsel a letter ... including written verification of these fees." The court found no duty for Gallerizzo to have assembled supporting documentation.
 
 
 35
 Contrary to Appellants' contention, verification of a debt involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed; the debt collector is not required to keep detailed files of the alleged debt. See Azar v. Hayter, 874 F.Supp. 1314, 1317 (N.D.Fla.), aff'd, 66 F.3d 342 (11th Cir.1995), cert. denied, 516 U.S. 1048, 116 S.Ct. 712, 133 L.Ed.2d 666 (1996). Consistent with the legislative history, verification is only intended to "eliminate the ... problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid." S.Rep. No. 95-382, at 4 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1699. There is no concomitant obligation to forward copies of bills or other detailed evidence of the debt.
 
 
 36
 In the present case, Gallerizzo, after receiving assurances from NationsBank that the sums were owed, verified the debt amounts in his January 18th letter to Plaintiffs' counsel and forwarded a copy of the bank's computerized summary of the Chaudhrys' loan transactions. The summary included a running account of the debt amount, a description of every transaction, and the date on which the transaction occurred. See Graziano v. Harrison, 950 F.2d 107, 113 (3d Cir.1991) (holding that computer printouts which confirmed amounts of debts, the services provided, and the dates on which the debts were incurred constituted sufficient verification). Thereafter, in a January 19th letter to counsel, Gallerizzo restated the amount of the inspection fees and indicated that the amounts were correct. Nothing more is required.
 
 
 37
 On Count III, the district court held that Gallerizzo was not "required to provide the degree of detail that was contained in the time sheets" and that Defendants' actions in redacting the legal fees was proper. The court ruled that "[v]erification only requires a debt collector to confirm with his client that a particular amount is actually being claimed, not to vouch for the validity of the underlying debt." For the same reasons stated above in support of the court's ruling on Count II, we agree with the court's determination on Count III.
 
 
 38
 Moreover, Gallerizzo cannot be liable for having redacted privileged information contained in the bills. Otherwise, a consumer would be able to prevent the legitimate collection of a debt by simply demanding the release of time entries from an attorney, serving as a collector, who has an ethical obligation to protect privileged information. Surely, the FDCPA does not require an attorney to violate that obligation.
 
 
 39
 In Count IV, Appellants allege that Gallerizzo's January 24, 1996 letter responding to a request from Diane Fox, the Chaudhrys' settlement attorney, was an attempt to collect the debt prior to the verification of the inspection fees or the attorneys' fees. Because the district court properly held that Gallerizzo verified the inspection fees and legal fees, Count IV must also fail. Even assuming that Gallerizzo failed to verify the fees, however, the court was correct in finding that Gallerizzo's letter was not an act to collect debt, but rather was sent to Fox, at her request, so that she could have an accurate payoff figure at a separate meeting to refinance the Chaudhrys' loan.
 
 
 40
 In sum, we find no error with respect to the district court's conclusion that Defendants did not violate § 1692g(b).
 
 
 41
 3. Gallerizzo's Alleged Failure to Mail Verification of Debt Directly to Chaudhrys
 
 
 42
 The FDCPA mandates that when a consumer disputes a debt in writing, "the debt collector obtains verification of the debt and a copy of such verification is mailed to the consumer by the debt collector." 15 U.S.C.A. § 1692g(b) (emphasis added). Appellants argue that Gallerizzo never mailed any verification of the debt to them directly. Rather, he mailed the relevant correspondence and documentation to their attorney, allegedly in violation of § 1692g(b).
 
 
 43
 Appellants, however, disregard § 1692c(a)(2), which prohibits communications between the debt collector and a debtor who is represented by an attorney.[7] 15 U.S.C.A. § 1692c(a)(2). Given the unmistakable language of § 1692c(a)(2) and in the absence of any statutory exceptions,[8] basic rules of statutory construction compel us to conclude that when a debtor is represented by an attorney, verification must be sent to the attorney. See Freytag v. Commissioner of Internal Revenue, 501 U.S. 868, 877, 111 S.Ct. 2631, 115 L.Ed.2d 764 (1991) ("Our cases consistently have expressed 'a deep reluctance to interpret a statutory provision so as to render superfluous other provisions in the same enactment.' "). Therefore, the district court was correct in determining that Gallerizzo did not violate § 1692g(b) by addressing communications to Appellants' attorney, rather than directly to the consumers.
 
 
 44
 4. Jury Verdict that Gallerizzo Knowingly Attempted to Collect Legal Fees in Excess of Amount Properly Chargeable to Plaintiffs
 
 
 45
 Appellants maintain that the jury verdict that Gallerizzo knowingly and intentionally attempted to collect legal fees in excess of the amount properly chargeable to them, in violation of § 1692e of the FDCPA,[9] was supported by the evidence in the case. Appellants argue that the district court, in granting Defendants' motion for judgment as a matter of law, in appropriately substituted its judgment for that of the jury. See Murdaugh Volkswagen, Inc. v. First National Bank of South Carolina, 801 F.2d 719, 725 (4th Cir.1986) (noting that, in reviewing the trial court's decision regarding judgment notwithstanding the verdict, court of appeals "may not substitute [its] judgment of the facts for that of the jury or pass on the credibility of witnesses"). To support their contention, Appellants point to the court's own language: "The Court, having observed the witnesses, finds this contention not worthy of belief. First, the Court disbelieves the Plaintiffs based upon an evaluation of their credibility at trial." Appellants conveniently omit, however, that this quotation is in reference to a wholly different matter, the court's consideration of Defendants' motion for sanctions against Plaintiffs and their attorney, not the motion for judgment as a matter of law. Indeed, when considering the motion for judgment as a matter of law, the court explicitly noted that it "may not substitute its judgment for that of the jury, nor may it make credibility determinations."
 
 
 46
 Appellants further insist that the jury's verdict is supported by references in the redacted Research Memorandum to an increase in a "consumer credit line" from NationsBank. The references, Appellants argue, demonstrate that Defendants were researching issues pertaining to Appellants' Private Home Equity Line of Credit, a consumer credit line with NationsBank unrelated to the Chaudhrys' debt under the Construction Loan that Gallerizzo was attempting to collect. To the contrary, Gallerizzo testified that the Chaudhrys' request for additional funding to finish construction of the Inglewood Home was reviewed under both the Home Equity Line and the Construction Loan. The use of the term "consumer credit line" related to the request for funds for the construction of the home and not solely to the Home Equity Line. Thus, the research was chargeable under the Construction Loan. As the trial court noted, Plaintiffs offered no evidence to rebut Gallerizzo's testimony. There was, therefore, no basis for the jury to find that the request to increase the consumer credit line was not related to the construction of the home. We find no error with the district court's grant of judgment as a matter of law in favor of Defendants.
 
 
 47
 5. Jury Verdict that Gallerizzo's Representations at the December 21, 1995 Meeting Were Not False, Deceptive, or Misleading
 
 
 48
 The Chaudhrys allege that Gallerizzo violated 15 U.S.C.A. § 1692e by promising, at the December 21st meeting, to provide them with the past due interest owed on the loan and that NMC would be willing to accept that amount in order to cure the defaults existing under the loan. The jury found that Gallerizzo did not deceive the Chaudhrys during the December 21st meeting, and the district court entered judgment in favor of Gallerizzo.
 
 
 49
 Appellants first charge that the district court improperly instructed the jury. In determining whether a debt collectors' act or communication constitutes a false, deceptive, or misleading practice under the FDCPA, Appellants urge that a court must assess the impact that the act or communication would have on the least sophisticated debtor. See United States v. National Financial Services, Inc., 98 F.3d 131, 135-36 (4th Cir.1996) (applying "least sophisticated debtor" standard to alleged violation of § 1692e). The court instructed the jury as follows:
 
 
 50
 When I refer to a person unsophisticated in matters of law or finance, I am referring to a person of reasonable intelligence who has a basic understanding and has a willingness to listen to what is being said with care. I am not referring to a person who places an unrealistic or irrational interpretation upon what was said.
 
 
 51
 Appellants insist that the language does not comport with the "least sophisticated debtor" standard.
 
 
 52
 We review challenges to jury instructions for abuse of discretion. See Nelson v. Green Ford, Inc., 788 F.2d 205, 208-09 (4th Cir.1986). The test of the adequacy of jury instructions is whether the jury charge, construed as a whole, adequately states the controlling legal principle without misleading or confusing the jury. See Spell v. McDaniel, 824 F.2d 1380, 1395 (4th Cir.1987). With this in mind, we believe that the court's instruction is consistent with the "least sophisticated debtor" doctrine which seeks to protect naive consumers, while "preserving a quotient of reasonableness and presuming a basic level of understanding." National Financial Services, 98 F.3d at 136. We are satisfied that the district court's instruction adequately informed the jury of the essential principles of the doctrine. We find no abuse of discretion.
 
 
 53
 Appellants also allege that, at the December 21st meeting, Gallerizzo refused to provide them with information about the interest arrearage, which if paid arguably would have prevented their default on the loan. Appellants maintain that Gallerizzo instructed them to put their request for the information in writing and that the bank would take no action until after responding to their proposal. Appellants insist that Gallerizzo never intended to provide the requested amount of interest arrearage. Rather, they argue, he acted solely to deceive them into delaying making the required interest payment so that he could accelerate the Construction Loan the following day.
 
 
 54
 Appellants' attorney tape-recorded the December 21st meeting, and, contrary to Appellants' assertions, the transcript of the recording contains no evidence of false or misleading representations by Gallerizzo. Throughout the meeting, Gallerizzo advised Appellants that he had no authority to bind the bank. He also stated that there could be no agreement unless the Chaudhrys provided a release of the alleged claims that they were making against the bank, which they refused to do. Given the content of the recording and the fact that the Chaudhrys had no right under the Construction Loan to cure the default simply by paying the interest arrearage, there is clearly sufficient evidence for the jury to conclude that Defendants did not violate § 1692e. Therefore, it would be inappropriate to reverse the jury's decision.
 
 
 55
 Appellants finally argue that the district court improperly refused to permit the Chaudhrys to use the unredacted version of the January 4, 1997 letter written by Appellants' counsel. Appellants contend the court's refusal contributed substantially to the jury's verdict. The January 4th letter contains numerous allegations against NationsBank not at issue in the instant case, but the subject of a separate state action. The state allegations are not only of questionable relevance but also may have unfairly prejudiced Defendants. The district court's decision to disallow an unredacted version of the letter is well within the discretion afforded the district court with respect to evidentiary matters.[10] See Martin v. Deiriggi, 985 F.2d 129, 137 (4th Cir.1993) (noting that decisions regarding the admission and exclusion of evidence are within the discretion of the trial court and should not be reversed on appeal absent an abuse of discretion).
 
 
 56
 6. Gallerizzo's Alleged Failure to Include Mandatory Language Required by § 1692e(11) in Letter to Plaintiffs' Settlement Attorney
 
 
 57
 Appellants allege a violation of § 1692e(11), which requires disclosure, in all communications to the consumer, "that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose." 15 U.S.C.A. § 1692e(11); see Carroll v. Wolpoff & Abramson, 961 F.2d 459, 461, (4th Cir.) (determining that the debt collection notification must be included in all correspondence), cert. denied, 506 U.S. 905, 113 S.Ct. 298, 121 L.Ed.2d 222 (1992). Gallerizzo sent a letter dated January 24, 1996 to the Chaudhrys' settlement attorney Diane Fox, instructing that "[p]ayment of the aforementioned amounts should be tendered to NMC prior to 2:00 p.m. on January 25, 1996 ...." Because Gallerizzo suggested that the Chaudhrys tender payment to NMC, Appellants argue that the letter was a continuation of Gallerizzo's efforts to collect the debt. As such, it required the inclusion of the § 1692e(11) debt collection notification. As explained above, however, Gallerizzo's letter was not an act to collect a debt, but rather was sent at Fox's request so that she could have an accurate payoff figure at the refinancing meeting. If the letter does not constitute an attempt to collect a debt, § 1692e(11) notification is not required.
 
 D. Sanctions
 
 58
 The district court, citing Count VII,[11] granted sanctions against Plaintiffs pursuant to 15 U.S.C.A. § 1692k(a)(3) and against their attorney pursuant to Fed.R.Civ.P. 11[12] and 28 U.S.C.A. § 1927.[13] The court, concluding that "the case was brought in bad faith and for the purposes of harassment of the Defendants," ordered Plaintiffs to pay Defendants $5000 and Plaintiffs' counsel to pay $10,000. We review the district court's decision to grant sanctions for abuse of discretion. See Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990) (noting that "an appellate court should apply an abuse-of-discretion standard in reviewing ... a district court's Rule 11 determination"); Carroll v. Wolpoff & Abramson, 53 F.3d 626, 628-29 (4th Cir.1995) (determining that abuse of discretion standard governs review of awards under § 1692k(a)(3)); Miltier v. Beorn, 896 F.2d 848, 855 (4th Cir.1990) (reviewing sanctions award under § 1927 for abuse of discretion.)
 
 
 59
 In Cooter & Gell v. Hartmarx Corp., the Supreme Court noted that "Rule 11 imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well grounded in fact, legally tenable, and 'not interposed for any improper purpose.' " Id. at 393, 110 S.Ct. 2447. "A complaint containing allegations unsupported by any information obtained prior to filing, or allegations based on information which minimal factual inquiry would disprove, will subject the author to sanctions."[14] In re Kunstler, 914 F.2d 505, 516 (4th Cir.1990), cert. denied, 499 U.S. 969, 111 S.Ct. 1607, 113 L.Ed.2d 669 (1991). Similarly, section 1692k(a)(3) allows the court, upon a finding that an action "was brought in bad faith and for the purpose of harassment," to award to the defendant reasonable attorney's fees. 15 U.S.C.A. § 1692k(a)(3). The district court, the Supreme Court has noted, "is better situated than the court of appeals to marshall the pertinent facts and apply the fact-dependent legal standard mandated by [a sanctions award]." Cooter & Gell, 496 U.S. at 402, 110 S.Ct. 2447; see also Brubaker, 943 F.2d at 1374 ("The district court is in the best position to determine whether sanctions should be imposed and, if so, how much.").
 
 
 60
 The Chaudhrys claim that, at the December 21, 1995 meeting, Gallerizzo promised that they could simply pay the interest arrearage to prevent default on the loan. The trial court, relying on the tape-recorded transcript of the December 21st meeting, determined that no "... rational person could have interpreted what was said at the meeting to be the promise that Plaintiffs and their counsel contend was made by Mr. Gallerizzo." We agree. We see nothing in the record that evidences such a promise. In fact, Gallerizzo's repeated admonitions that he was not authorized to commit the bank to any agreement and that the bank would not negotiate further without a signed release suggest just the opposite. Furthermore, Gallerizzo indicated at the meeting that the bank could require payment of the loan in full. Appellants' claim that Gallerizzo made a representation that was false, misleading, and deceptive is utterly without factual foundation. Given the substantial justification for its finding, the district court did not abuse its discretion by imposing what we believe to be appropriate and reasonable sanctions against Appellants and their attorney. By so ruling, we in no way intend to discourage the legitimate pursuit of FDCPA litigation but, rather, hope to deter groundless claims like the one advanced here.
 
 
 61
 For the foregoing reasons, we affirm the district court's ruling in totum.
 
 
 62
 AFFIRMED.
 
 
 
 [1]
 The Construction Loan contained various loan documents, including a Residential Construction Loan Agreement, a Construction Loan Rider, an Adjustable Rate Note and an Adjustable Rate Rider
 
 
 [2]
 Under the Construction Loan, the Chaudhrys had no right to cure the default by simply paying past due interest. Moreover, the Construction Loan required that if the Inglewood Home was not completed by December 31, 1995, the Chaudhrys would have to pay all sums due by such date
 
 
 [3]
 On the same date, the Chaudhrys initiated a lawsuit against NMC, NationsBank, N.A., various NationsBank loan officers, Gallerizzo and Gebhardt & Smith in the Circuit Court of Maryland for Montgomery County, Case No. 150185 (the "State Action"), in which the Chaudhrys alleged numerous lender liability claims. Gallerizzo and Gebhardt & Smith were dismissed with prejudice by the state trial court prior to the commencement of trial in the instant case
 
 
 [4]
 The materials previously had been reviewed by another district court judge who subsequently recused himself
 
 
 [5]
 Section 1692g(a), in pertinent part, states:
 (a) Notice of debt; contents
 Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing--
 (1) the amount of the debt; * * *
 15 U.S.C.A. § 1692g(a).
 
 
 [6]
 Section 1692g(b) provides as follows:
 [I]f the consumer notifies the debt collector in writing within [30 days of the initial notice] that the debt, or any portion thereof, is disputed, ... the debt collector shall cease collection of the debt, or any disputed portion thereof, until verification is mailed to the consumer.
 15 U.S.C.A. § 1692g(b).
 
 
 [7]
 Moreover, at the end of the December 21st meeting, Appellants' counsel specifically requested that all communications be directed to him
 
 
 [8]
 Section 1692c(a)(2) permits communications between the debt collector and a consumer represented by counsel where "the attorney fails to respond within a reasonable period of time to a communication from the debt collector or ... consents to direct communication with the consumer." 15 U.S.C.A. § 1692c(a)(2)
 
 
 [9]
 Under § 1692e, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with collection of any debt." 15 U.S.C.A. § 1692e
 
 
 [10]
 Appellants also allege that the district court committed other supposedly prejudicial errors. The allegations are utterly without merit, however, so we decline to discuss them at length here. For example, Appellants object to the wording of certain questions to the jury, yet Appellants expressly accepted the language at trial. It seems inappropriate now to allow Appellants to argue that the questions should have been phrased differently
 
 
 [11]
 In Count VII, the Chaudhrys claim that, at the meeting of December 21, 1995, Gallerizzo made false, deceptive, and misleading statements to them in violation of § 1692e of the FDCPA
 
 
 [12]
 Rule 11 provides as follows:
 (b) Representations to Court. By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,--
 (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
 (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
 (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
 (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonable based on a lack of information or belief.
 (c) Sanctions. If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.
 Fed.R.Civ.P. 11(b), (c).
 
 
 [13]
 Section 1927 provides that an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C.A. 1927 (West 1998)
 
 
 [14]
 While distinct from Rule 11, section 1927 also requires "a finding of counsel's bad faith as a precondition to the imposition of fees." Brubaker v. City of Richmond, 943 F.2d 1363, 1382 n. 25 (4th Cir.1991)