**CINCINNATI INSURANCE COMPANY, Plaintiff,**

v.

**ZURICH INSURANCE COMPANY, Defendant.**

No. 5:99CV138–H.

United States District Court,
W.D. North Carolina,
Statesville Division.

July 24, 2000.

---

Leslie C. O'Toole, Neil A. Riemann, Smith, Helms, Mulliss & Moore, Raleigh, NC, for plaintiff.

Brien D. Stockman, Michael G. Gibson, Dean & Gibson, Charlotte, NC, for defendant.

### *MEMORANDUM AND ORDER*

HORN, Chief United States Magistrate Judge.

**THIS MATTER** is before the Court on Defendant's "Motion to Compel" (document # 16) and "Defendant's Memorandum in Support...." (document # 17), both filed June 9, 2000, and "Cincinnati's Brief in Response...." (document # 19), filed June 26, 2000. Defendant's counsel has advised the Court that a reply brief will not be filed.

The parties have consented to Magistrate Judge jurisdiction under 28 U.S.C. § 636(c), and these motions are now ripe for disposition.

Having carefully reviewed the pleadings, record, arguments of counsel, and applicable authority, the Court will *grant in part* and *deny in part* Defendant's "Motion to Compel" (document # 16).

### I. *FACTUAL AND PROCEDURAL BACKGROUND*

This is a dispute between two insurance companies regarding liability coverage for damages and injuries resulting from an automobile accident. The Defendant, Zurich Insurance Company ("Zurich"), was at all relevant times the primary liability carrier for Ladd Furniture, Inc. (hereinafter "Ladd"). The limit of Zurich's primary liability policy was $1 million. The Plaintiff, Cincinnati Insurance Company ("Cincinnati"), Ladd's excess carrier, insured the next $50 million.

As a result of an accident that occurred on March 7, 1996, in North Wilkesboro, North Carolina, Jason and Elaine Whitley sued Ladd for injuries that Mr. Whitley incurred as a result of being struck in the rear by a Ladd truck. Zurich now characterizes the underlying claim as an "extraordinarily unusual personal injury action involving questions of liability, minimal medical expenses and questionable injuries received by the un-

derlying tort claimant." Nevertheless, Zurich had a duty to defend Ladd in the underlying case and did so through its chosen counsel, Jack Michaels and Jay Tobin of Young, Moore & Henderson in Raleigh and James Moore of North Wilkesboro. Linda Murray, a representative from Zurich's major claims unit, also personally attended much of the January 1999 trial.

Prior to trial, both Zurich and its counsel evaluated the case and agreed that it had a settlement value of approximately $750,-000.00, which was within the primary insurance limits. Prior to trial, the lowest demand from the Whitleys was $3.9 million.

During the course of trial, the Whitleys lowered their settlement demand to $500,-000.00. Based upon developments at trial, Zurich's adjuster (Ms. Murray) decided to counter-offer with the sum of $425,000.00, which was Zurich's highest pre-trial offer. The counter-offer was rejected, and very shortly thereafter, the Whitleys withdrew their offer to settle for $500,000.00. The jury later returned a verdict of approximately $3.85 million.

Cincinnati filed the present action on or about August 27, 1999, alleging that Zurich breached its fiduciary and/or contractual duty to Cincinnati by not settling the underlying case within the primary policy limits. As one of the stated grounds amounting to a breach of duty, in Paragraph 11 of the Complaint, Cincinnati alleges that prior to the verdict, all of Zurich's lawyers and one of Cincinnati's lawyers, Robert Sumner of Cranfill Sumner & Hartzog, urged Zurich's adjuster to take the $500,000.00 offer; that said communication between Zurich's adjuster and Cincinnati's counsel occurred by telephone while the offer was still open; and that 30 minutes after the telephone call, the jury returned the $3.85 million verdict. The case settled shortly thereafter for $3.65 million plus court costs. As a result of Zurich's refusal to settle and the consequent verdict, Cincinnati was required to pay $2,652,877.49 on behalf of Ladd, but expressly reserved its right to recover against Zurich.

Zurich counters that prior to trial, counsel for the parties met on at least one occasion to discuss the merits of the case and settlement value; and that Cincinnati sent one of its adjusters to the pre-trial mediation, who expressed the opinion that Zurich had *overvalued* the case when it had offered $425,000.00 and generally agreed that the Whitley claim was "not an excess case."

Zurich served Cincinnati with its First Set of Interrogatories and Request For Production of Documents on January 18, 2000, which sought to discover Cincinnati's own pre-trial valuation of the Whitley claim, including discovery of communications and discussions between Cincinnati and its attorneys. In response, Cincinnati asserted the work product doctrine and/or attorney-client privilege as to multiple items, providing instead a "privilege log" to Zurich.

On June 9, 2000, Zurich filed the subject "Motion to Compel" the production of nineteen of the documents identified on the privilege log[1]. As noted, Cincinnati's Brief in Response has been filed and the subject motion is now ripe for resolution.

## II. *DISCUSSION*

### A. *Discovery and Motions to Compel*

■ Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that:

Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

1. See Exhibit D to Zurich's Motion. These documents will be referred to, for the purposes of this motion, as if numbered sequentially, that is,

The rules of discovery are to be accorded broad and liberal construction. *See Herbert v. Lando*, 441 U.S. 153, 177, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979); *and Hickman v. Taylor*, 329 U.S. 495, 507, 67 S.Ct. 385, 91 L.Ed. 451 (1947).

■ Whether to grant or deny a motion to compel is generally left within the district court's broad discretion. *See, e.g., Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 929 (4th Cir.1995) (denial of motions to compel reviewed on appeal for abuse of discretion); *Erdmann v. Preferred Research Inc.*, 852 F.2d 788, 792 (4th Cir. 1988) (noting district court's substantial discretion in resolving motions to compel); *and LaRouche v. National Broadcasting, Co.*, 780 F.2d 1134, 1139 (4th Cir.1986) (same). However, regarding cases such as this, where work product doctrine or attorney-client privilege is raised in objection to a discovery request, the Fourth Circuit has recently stated that "[w]e review the district court's decision that certain documents are subject to privilege *de novo*, since it involves a mixed question of law and fact." *Chaudhry v. Gallerizzo*, 174 F.3d 394, 402 (4th Cir.), *cert. denied*, 528 U.S. 891, 120 S.Ct. 215, 145 L.Ed.2d 181 (1999). *Accord In re Grand Jury Proceedings*, 33 F.3d 342, 353 (4th Cir. 1994).

In this case, Cincinnati has timely objected to producing certain documents on the grounds pursuant to either the work product doctrine alone or under both the work product doctrine and attorney-client privilege. Regarding the interplay between the two privileges, the Supreme Court has explained:

While the attorney-client privilege is intended to promote communication between attorney and client by protecting client confidences, *the work-product privilege is a broader protection*, designed to balance the needs of the adversary system: promotion of an attorney's preparation in representing a client versus society's general interest in revealing all true and material facts to the resolution of a dispute.

"Number 19" is the last document on Zurich's list.

*United States v. Nobles,* 422 U.S. 225, 238, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975) (emphasis added).

The documents in dispute are:

1. Analysis and evaluation of Whitley case, dated January 12, 1999, prepared by Mr. Sumner for Cincinnati's adjusters.

2. A letter, dated December 23, 1998, from Mr. Sumner's paralegal to a Cincinnati adjuster, "re: documents in Whitley."

3 – 6. Four Memoranda, dated January 21, 27, 28, and 29, 1999, respectively, each by a Cincinnati adjuster, and each "re: telephone call with Sumner re: 'trial' [or] 'progress of trial' "

7. A fax, dated January 27, 1999, from a Cincinnati adjuster to Mr. Sumner, "re status of trial."

8. A Cincinnati intra-office email, dated December 11, 1998, "re: Sumner's case evaluation."

9. A letter, dated December 28, 1998, from Mr. Sumner to a Cincinnati adjuster, "re: meeting with Ladd's counsel."

10. A Memorandum, dated January 29, 1999, by a Cincinnati adjuster, "re: telephone call with Sumner re: meeting with Ladd's counsel."

11. A letter, dated December 16, 1998, from Mr. Sumner to the Cincinnati adjusters, "re: evaluation of Whitley."

12. A letter, dated December 2, 1998, from a Cincinnati adjuster to Mr. Sumner requesting his evaluation of the Whitley litigation.

13. A draft of Number 12.

14. A Cincinnati intra-office email, dated November 24, 1998, "re: telephone call with Ladd's counsel."

15. A fax, dated December 17, 1998, from a Cincinnati adjuster to Mr. Sumner, "re: pre-trial motions in Whitley" case.

16. A letter, dated January 19, 1999, from Mr. Sumner to Cincinnati's adjusters, "re: pre-trial report by Ladd's counsel in Whitley."

17. A draft letter to Ladd's counsel, dated January 22, 1999, by Mr. Sumner, "re: trial monitoring in Whitley."

18. A handwritten note, dated December 2, 1998, from a Cincinnati adjuster to Mr. Sumner, "re: Cincinnati's claim file."

19. The case file record at Cranfill, Sumner and Hartzog.

### B. *Work Product*

The work-product privilege is intended to prevent a litigant from taking a free ride on the research and thinking of his opponent's lawyer and to avoid the resulting deterrent to a lawyer's committing his thoughts to paper. *See, e.g., Nobles,* 422 U.S. at 236–39, 95 S.Ct. 2160; *and Taylor,* 329 U.S. at 510–11, 67 S.Ct. 385.

As the Fourth Circuit described the work product doctrine most recently:

> Under the work product rule, codified in Fed.R.Civ.P. 26(b)(3), an attorney is not required to divulge, by discovery or otherwise, facts developed by his efforts in preparation of the case or opinions he has formed about any phase of the litigation. . . . Fact work product is discoverable only upon a showing of both a substantial need and an inability to secure the substantial equivalent of the materials by alternate means without undue hardship. *Opinion work product is even more carefully protected, since it represents the thoughts and impressions of the attorney* . . . . . [a]n attorney's thoughts are inviolate, . . . and courts should proceed cautiously when requested to adopt a rule that would have an inhibitive effect on an attorney's freedom to express and record his mental impressions and opinions without fear of having these impressions and opinions used against the client. *As a result, opinion work product enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances.*

*Chaudhry,* 174 F.3d at 403 (internal citations omitted) (emphasis added). *Accord Grand Jury,* 33 F.3d at 348; *and In re Doe,* 662 F.2d 1073, 1077–80 (4th Cir.1981).

■ In this case, Cincinnati seeks to shelter under the work product doctrine not documents prepared by Cincinnati or its counsel in contemplation of this action, but rather in regard to the prior litigation between the Whitleys and Ladd. However, the law is clear that work product prepared in anticipation of earlier litigation retains its protection in later disputes. *See, e.g., Federal Trade Commission v. Grolier Inc.,* 462 U.S. 19, 25–27, 103 S.Ct. 2209, 76 L.Ed.2d 387 (1983); *Duplan Corp. v. Deering Milliken, Inc. (Duplan III),* 540 F.2d 1215, 1219 (4th Cir.1976) (documents prepared in prior litigation protected against subsequent discovery); *Duplan Corp. v. Moulinage et Retorderie de Chavanoz (Duplan II),* 509 F.2d 730, 736 (4th Cir.1974) (same); *and Duplan Corp. v. Moulinage et Retorderie de Chavanoz (Duplan I),* 487 F.2d 480, 483–84 (4th Cir.1973) (same).

All of the items sought by Zurich involve either "facts developed in preparation of" or "opinions formed about" the prior litigation, and therefore, as Zurich concedes, absent an exception to the work product doctrine, discovery is not proper. *Accord Grolier Inc.,* 462 U.S. at 25–27, 103 S.Ct. 2209; *and Duplan III,* 540 F.2d at 1219.

Cincinnati raises the lower standard of work product protection for "facts developed" in only eight (8) items—Numbers 2, 7, 12, 13, 14, 15, 18, and 19; however, while Zurich *might* have great need for and derive great usefulness from the facts contained in *any* of the 19 items, it has made no showing of "an inability to secure the substantial equivalent of the materials by alternate means without undue hardship." *Chaudhry,* 174 F.3d at 403. To the contrary, the record clearly reflects, and common-sense dictates, that as the primary carrier obligated to provide a defense to Ladd and necessarily involved in all settlement negotiations, Zurich would be in *the* pre-eminent position to know the facts of the underlying claim, the status of the lawsuit, and the progress, or lack thereof, in the attendant negotiations. Therefore, Zurich clearly cannot establish an exception to work product on the ground of "substantial need and inability to [otherwise] secure" the information. *Id.*

However, that is not the end of the analysis. Cincinnati evidently intends to call one of its attorneys, Mr. Sumner, as a witness a trial and therefore concedes that Zurich is entitled to take Mr. Sumner's deposition. The heart of Mr. Sumner's testimony, as pled by Cincinnati, is that he disagreed with and argued against Zurich's decision not to accept the $500,000 settlement offer. Therefore, Cincinnati has placed Mr. Sumner's testimony squarely at issue in this case and has therefore impliedly waived work product protection for both the facts and opinions that underlie his testimony.

■ The Supreme Court has clearly stated that the privilege derived from the work-product doctrine is not absolute and may be waived. *Nobles,* 422 U.S. at 239, 95 S.Ct. 2160. In deciding whether there was an implied waiver, the Court instructed:

What constitutes a waiver with respect to work-product materials depends, of course, upon the circumstances. Counsel necessarily makes use throughout trial of the notes, documents, and other internal materials prepared to present adequately his client's case, and often relies on them in examining witnesses. When so used, there normally is no waiver. *But where, as here, counsel attempts to make a testimonial use of these materials the normal rules of evidence come into play with respect to cross-examination and production of documents.*

*Id.* (emphasis added).

And the Court went on to hold that:

[the r]espondent can no more advance the work-product doctrine to sustain a unilateral testimonial use of work-product materials than he could elect to testify in his own behalf and thereafter assert his Fifth Amendment privilege to resist cross-examination on matters reasonably related to those brought out in direct examination.

*Id. Accord McGautha v. California,* 402 U.S. 183, 215, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971); *In re Martin Marietta Corp.,* 856 F.2d 619, 625–26 (4th Cir.1988); *and Duplan III,* 540 F.2d at 1222–23.

■ The Fourth Circuit has previously declined to apply this implied waiver to

"opinion" work product.[2]  *Martin Marietta Corp.*, 856 F.2d at 626.  However, in that case, the Court stated that:

> There is relatively little danger that a litigant will attempt to use a pure mental impression ... as a sword and as a shield in the trial of a case so as to distort the factfindiing process.  Thus, the protection of lawyers from the broad repercussions of subject matter waiver in this context strengthens the adversary process, and, unlike the selective disclosure of evidence, may ultimately and ideally further the search for the truth.

*Id.*

This instant case is precisely the type that the Fourth Circuit speaks of above—where a litigant *does* attempt to use an opinion as its sword, all the while shielded by the work product doctrine.  Cincinnati has unequivocally pled and admittedly seeks to offer both Mr. Sumner's factual and opinion testimony in this case.  Under the doctrine espoused in *Nobles,* this is surely an implied waiver of privilege as to both fact and opinion work product.  *See Nobles,* 422 U.S. at 239, 95 S.Ct. 2160.  Therefore, Mr. Sumner's opinions as to the value of the underlying case and the advisability of accepting the settlement offer, and the facts giving rise to those opinions, unless otherwise privileged,[3] are fair game.

### C. *Attorney–Client Privilege*

The attorney-client privilege is intended to encourage those who find themselves in actual or potential legal disputes to be candid with lawyers who advise them, and is one of the oldest recognized privileges for confidential communications.  *See Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981); *and Hunt v. Blackburn,* 128 U.S. 464, 470, 9 S.Ct. 125, 32 L.Ed. 488 (1888).  The attorney-client privilege is intended to encourage "full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and

the administration of justice." *Upjohn,* 449 U.S. at 389, 101 S.Ct. 677.  *Accord Swidler & Berlin v. U.S.,* 524 U.S. 399, 404, 118 S.Ct. 2081, 141 L.Ed.2d 379 (1998).

When the privilege applies, it affords confidential communications between lawyer and client complete protection from disclosure.  However, since it impedes the full and free discovery of the truth, the attorney-client privilege is narrowly construed.  *See Trammel v. United States,* 445 U.S. 40, 50, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980); *In re Grand Jury Subpoena,* 204 F.3d 516, 519–20 (4th Cir.2000); *and Hawkins v. Stables,* 148 F.3d 379, 383 (4th Cir.1998).

Cincinnati claims attorney-client privilege in items Number 1, 3–12, 15, 16, and 18, all of which are written communications between Cincinnati and its lawyers or written restatements of conversations between them and, as Zurich admits, are within the attorney-client privilege unless otherwise waived.

It is well-settled in the Fourth Circuit that "[t]he proponent of the privilege must establish ... that the privilege was not waived." *In re Grand Jury Subpoena,* 204 F.3d at 522.  Although there is no published Fourth Circuit case law on whether a party can waive the privilege by placing its attorney's knowledge of facts or communications in issue, three other circuits have concluded that the privilege can be so waived.  *See Frontier Refining, Inc. v. Gorman–Rupp Co., Inc.,* 136 F.3d 695, 699–700 (10th Cir. 1998) ("litigant waives the attorney-client privilege if, and only if, the litigant directly puts the attorney's advice at issue in the litigation"); *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.,* 32 F.3d 851, 863–64 (3d Cir.1994); *and Chevron Corp. v. Pennzoil Co.,* 974 F.2d 1156, 1162 (9th Cir.1992) (privilege waived where a party claimed that its tax position was reasonable because it was based upon advice of counsel).  However, these circuits are divided as to the exact standard for the waiver of privilege.  *Rhone,* 32 F.3d at 864.

---

2.  Cincinnati contends that eleven (11) items contain opinion work product—Numbers 1, 3–6, 8–11, and 16–17

3.  Cincinnati also contends, however, that Numbers 1, 3–12, 15, 16, and 18 are within its attorney client privilege as discussed below.

■ The Third Circuit analyzed this issue most persuasively in *Rhone*, stating:

> Finding a waiver of the attorney client privilege when the client puts the attorney's advice in issue is consistent with the essential elements of the privilege. That is, in leaving to the client the decision whether or not to waive the privilege by putting *the attorney's advice in issue*, we provide certainty that the client's confidential communications will not be disclosed unless the client takes an affirmative step to waive the privilege, and we provide predictability for the client concerning the circumstances by which the client will waive that privilege. This certainty and predictability as to the circumstances of a waiver encourage clients to consult with counsel free from the apprehension that the communications will be disclosed without their consent.

*Rhone*, 32 F.3d at 863–64 (emphasis added). *Accord Frontier*, 136 F.3d at 699–700.

The *Rhone* court went onto distinguish between a litigant affirmatively placing its attorney's advice at issue and cases merely where, as here, the litigant's state-of-mind, or opinion, is relevant, stating:

> Some decisions have extended the finding of a waiver of the privilege to cases in which the *client's state of mind may be in issue in the litigation. These courts have allowed the opposing party discovery of confidential attorney client communications in order to test the client's contentions.* These decisions are of dubious validity. While the opinions dress up their analysis with a checklist of factors, they appear to rest on a conclusion that the information sought is relevant and should in fairness be disclosed. *Relevance is not the standard for determining whether or not evidence should be protected from disclosure as privileged, and that remains the case even if one might conclude the facts to be disclosed are vital, highly probative, directly relevant or even go to the heart of an issue.*

*Id.* at 864 (emphasis added). *Accord Frontier*, 136 F.3d at 699–700.

Applying that standard and distinction to this case, Cincinnati has done nothing—yet—that makes the advice of counsel an issue. While it is true that Cincinnati has placed Mr. Sumner's *knowledge and opinions* at issue, Cincinnati has not so implicated the contents of *confidential communications* to mandate their production. However, should Cincinnati put confidential communications of counsel at issue *more* directly—before or even during the trial of this case—Zurich remains free to renew the instant motion.

## III. *ORDER*

### NOW THEREFORE, IT IS ORDERED:

1. Defendant's "Motion to Compel" (document # 16) is **GRANTED** as to items number 2, 13, 14, 17, and 19; and **DENIED** *at this time* as to the remaining items. Each party shall bear its own costs.

2. The Clerk is directed to send copies of this Memorandum and Order to counsel for the parties.